**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**JEFF SWANSON,**

      **Plaintiff,**

**v.**                                     **No. 1:20-cv-00496-JAP-GJF**

**COUY GRIFFIN,**
**Otero County Commissioner in his individual**
**capacity acting under the color of law, and**
**SYLVIA TILLBROOK, Otero County**
**Records Custodian,**

      **Defendants.**

**DEFENDANTS' MOTION TO DISMISS**
**AND FOR QUALIFIED IMMUNITY[1]**

**ORAL ARGUMENT REQUESTED**

NOW COME Defendants Couy Griffin and Sylvia Tillbrock, by and through undersigned

counsel, and hereby respectfully move the Court for an order dismissing all claims against them

with prejudice. In the alternative, Defendant Griffin requests the Court grant him qualified

immunity from suit. In accordance with Local Rule 7.1, Defendant sought concurrence from the

Plaintiff; the Plaintiff has not responded; as such opposition to this motion is assumed. In support

of the motion, Defendants state the following:

---

[1] By filing this motion in lieu of an answer, Defendants do not intend to waive any affirmative defense and reserves the right to state additional affirmative defenses at a later date should the need arise. However, Defendants without limitation state the following possible affirmative defenses: Plaintiff has failed to state a claim under which relief may be granted; Plaintiff's claims are barred by res judicata, priority jurisdiction, and collateral estoppel; Plaintiff has failed to mitigate his damages; any damage incurred by the Plaintiff was caused by others for which Defendants cannot be held liable; the actions of Defendants do not rise to the level of any contractual, statutory, or constitutional violations or other deprivations or breach of Plaintiff's rights; Plaintiff's claims are barred by estoppel, laches, and the doctrine of extraordinary circumstances; Plaintiff's complaint is barred by the doctrines of absolute and/or qualified immunity; Plaintiff's claims are barred as a matter of law.

## INTRODUCTION

Mr. Swanson, Plaintiff, has brought a First Amendment claim asserting that Mr. Griffin, apparently acting on behalf of the "Cowboys for Trump" Facebook page, has violated his First Amendment rights by blocking Plaintiff from "following" the Facebook page. In support of his belief that his First Amendment rights were violated, Plaintiff served a request on the Otero County Records Custodian, Sylvia Tillbrook. The Complaint does not state what was requested; however, Plaintiff's Exhibit 2 contains the request that sought:

1. A copy of the Facebook page evincing the people Couy Griffin on his page had blocked as of today's date.
2. Copies of all Facebook messenger messages regarding public business sent or received by Couy Griffin
3. Copies of every post including the comments from Couy Griffin's Facebook page regarding county business for the last 12 months.

*See* Exhibit 2 to Plaintiff's Complaint [Doc. 1-2].

As explained below, the Complaint does not contain sufficient fact allegations to assert a First Amendment viewpoint discrimination claim against Mr. Griffin. Further, even if such facts were pled, there exists no clearly established law recognizing this claim in this Circuit. Therefore, Mr. Griffin is entitled to qualified immunity from suit on all federal claims. This is in conformity with the Second Circuit's recognition that not every social media account operated by a public official is a government account. *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 236 (2d Cir. 2019) Similarly, the Complaint does not contain sufficient fact allegations to establish a plausible violation of the New Mexico Inspection of Public Records Act because the documents sought are not public records.

Therefore, Mr. Griffin and Ms. Tillbrook hereby respectfully request the Court enter an Order dismissing this claim with prejudice or, in the alternative, granting Mr. Griffin qualified immunity from suit.

## STANDARD OF REVIEW

Under Rule 12(b)(6), the Court reviews the allegations for plausibility; specifically, the Court queries whether enough facts have been pled to state a plausible claim. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The "plaintiff must plead that each Government-official defendant, through his own individual actions, has violated the Constitution." *Ashcroft v Iqbal,* 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009).

> If a complaint explicitly alleges every fact necessary to win at trial, it has necessarily satisfied this requirement. If it omits some necessary facts, however, it may still suffice so long as the court can plausibly infer the necessary unarticulated assumptions. But if the complaint is sufficiently devoid of facts necessary to establish liability that it encompasses a wide swath of conduct, much of it innocent, a court must conclude that plaintiffs have not nudged their claims across the line from conceivable to plausible. Plaintiffs thus omit important factual material at their peril. While a complaint must be short and plain, it must also show not merely assert that relief is appropriate if it is true. Thus, despite the liberality of modern rules of pleading, a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.

> ***

> This pleading requirement serves two purposes. First, it ensures that defendants know the actual grounds of the claim against them, and can therefore prepare a defense.  Second, it avoids ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim. The latter concern is especially pertinent in [] immunity cases, where the very purpose of interlocutory appeal is to spare official defendants from the ordeal of discovery if the complaint fails to allege a constitutional violation…

*Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)(citation removed) (discussing qualified immunity).

In reviewing the plausibility of a complaint, the Court assumes the truth of all well-pleaded facts in the complaint, and draws reasonable inferences therefrom in the light most favorable to the plaintiff. *See Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009). *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

In addition, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted" under Rule 8(a)(2). *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir.2009) (quotation marks and citation omitted), cert. denied, 130 S.Ct. 1142, (2010).

The Supreme Court has clarified the Rule 12 standard, stating that "to withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.' " *Id*. at 1247 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, so that "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Under this standard, "a plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss." *Smith*, 561 F.3d at 1098. Therefore, a plaintiff must "frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). Vague and conclusory allegations will not sustain a claim under Rule 12 and *Iqbal*. *See Gee v. Pacheco,* 627 F.3d 1178 (10th Cir. 2010) "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has merely made an allegation, "but it has

not shown that the pleader is entitled to relief." *Iqbal* at 1950 (emphasis added) (alteration,

quotation marks, and citation omitted). *See also Gee v. Pacheco,* 627 F.3d 1178 (10th Cir. 2010)

## QUALIFIED IMMUNITY[2]

> The doctrine of qualified immunity protects officials from civil liability as long as they do not " 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Mullenix v. Luna*, ─── U.S. ───, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). To defeat this immunity, we require the plaintiff to show that
>
> • the defendant violated a constitutional or statutory right and
>
> • the violated right was " 'clearly established at the time of the alleged unlawful activity.' "

*Lincoln v. Maketa*, 880 F.3d 533, 537 (10th Cir. 2018)(bullet points in original). Those two

elements are commonly referred to as the two prongs of a qualified immunity test. The first prong,

in essence, deals with whether the Plaintiff has stated a plausible claim for relief under *Iqbal* as

described above. The second prong goes farther and commands dismissal, even of plausible

claims, if the complaint fails to illustrate a violation of "clearly established law".

Once "a defendant raises a claim of qualified immunity, the burden shifts to the plaintiff to

show that the defendant is not entitled to that immunity." *Douglas v. Dobbs*, 419 F.3d 1097, 1100

(10th Cir. 2005); *see also Matthews v. Bergdorf*, 889 F.3d 1136, 1144 (10th Cir. 2018)(noting that

district court decisions which place the burden on the defendant-movant of establishing qualified

immunity constitute error). *Matthews* explains that, under the qualified immunity analysis, the

---

[2] For additional information regarding the qualified immunity test see Judge Browning's summary at: *Ganley v. Jojola*, 402 F. Supp. 3d 1021, 1057–63 (D.N.M. 2019); see also Judge Johnson's discussion of plaintiffs' "heavy, two-part burden" in *Flores v. City of Farmington*, 2019 WL 4860898, at *3 (D.N.M. Oct. 2, 2019).

conduct of each individual capacity defendant must be isolated and analyzed, as opposed to an analysis of the defendants' conduct cumulatively. *Id*. at 1145.

Regarding the clearly established law prong of a qualified immunity test, a "[g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir.2001). Courts must not define the relevant constitutional right "at a high level of generality." *White v. Pauly*,137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)). Instead, as the Supreme Court "explained decades ago, the clearly established law must be 'particularized' to the facts of the case." *Id*. (quoting *Creighton*, 483 U.S. at 640, 107 S.Ct. 3034); *see also id.* (holding that lower court "misunderstood the 'clearly established' analysis" when it determined the law was clearly established without first "identify[ing] a case where an officer acting under similar circumstances as [defendant] was held to have violated" relevant constitutional right). *Perry v. Durborow*, 2018 WL 2925202, at *5 (10th Cir. June 12, 2018).

The Supreme Court has explained that, to meet their burden, plaintiffs must illustrate that, "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017). The Tenth Circuit, in *Perry*, reversed the district court's denial of qualified immunity because "the district court erred in concluding that the law was clearly established without first identifying in its order a case where an officer acting

under similar circumstances as [the defendant] was held to have violated the Eighth or Fourteenth Amendments." *Perry* at *9 (citation removed).

Only a month before the Tenth Circuit published the *Perry* decision, it published *Matthews v. Bergdorf*, 889 F.3d 1136, 1144 (10th Cir. 2018) where it explained, that "[b]efore a court may undertake the proper [qualified immunity] analysis, the complaint must isolate the allegedly unconstitutional acts of each defendant; otherwise the complaint does not "provide adequate notice as to the nature of the claims against each" and fails for this reason. (citation removed). Therefore, the immunity question raised below must be analyzed solely on the allegations made against each defendant, isolated from conduct asserted generally. *Matthews* went on to grant immunity even under extremely egregious allegations contained in that complaint. Specifically, the Court explained that "[t]o allow Plaintiff's complaint to proceed on claims that have no basis in constitutional jurisprudence would thwart the aims of qualified immunity and impose excessive discovery costs on Defendants absent legal justification." *Id.* As described above, even if the Court were to find Plaintiff had met the *Iqbal* standard with his allegations against Defendant Griffin, after excluding allegations that do not allege specific conduct by Griffin, then the Court still must grant Griffin immunity unless Plaintiff provides the Court with a case that clearly established the law at the relevant time period. Plaintiff fails on both prongs: his Complaint does not allege sufficient plausible facts to state a claim against Griffin in his individual capacity and his claim does not constitute a violation of clearly established law. Therefore, the Court must either dismiss Griffin with prejudice or grant him qualified immunity from suit.

## I.     MR. GRIFFIN IS ENTITLED TO QUALIFIED IMMUNITY FROM SUIT UNDER BOTH PRONGS OF THE TENTH CIRCUIT'S TEST.

As explained above, qualified immunity has two prongs. The first prong is essentially an *Iqbal* defense where the defendant illustrates that the plaintiff has failed to plead sufficient facts to

nudge his claim from merely possible to plausible. If a plaintiff convinces the Court that the claim is plausible, then the defendant is still entitled to qualified immunity unless the plaintiff can direct the Court to holdings sufficient to deem the law "clearly established." Here, Plaintiff's claim fails both prongs; therefore, all federal claims should be dismissed.

### a. PLAINTIFF HAS NOT STATED A PLAUSIBLE CLAIM AGAINST DEFENDANT GRIFFIN.

There are no Tenth Circuit cases discussing the elements of First Amendment viewpoint discrimination in the context of social media[3]. Similarly, this District appears to have no case on point. However, Judge Herrera did discuss viewpoint discrimination in *Hunt v. Bd. of Regents of the Univ. of New Mexico*, 338 F. Supp. 3d 1251, 1255 (D.N.M. 2018), *aff'd sub nom. Hunt v. Bd. of Regents of Univ. of New Mexico*, 792 Fed. Appx. 595 (10th Cir. 2019)(granting individual defendants qualified immunity from plaintiff's First Amendment viewpoint claim based on the lack of clearly established law.) *Hunt* involved University of New Mexico discipline related to a student's private Facebook post that was vulgar and politically charged.

However, other Circuits have taken up the issue of an elected official's social media presence and that official's decision to block certain individuals; however, there are very few such cases and the law is not well developed. To the extent the law is developed, the law supports the argument that Cowboys for Trump is not a governmentally owned public forum and, that the facts alleged by Plaintiff do not meet even the other circuits' tests. For example in *Robinson v. Hunt County, Texas*, 921 F.3d 440 (5th Cir. 2019), reh'g denied (May 16, 2019), a local sheriff's office maintained an official sheriff's office Facebook page. *Id* at 445. In January 2017, an officer was murdered and the sheriff's office posted the following post to its official page:

---

[3] The Tenth Circuit has discussed viewpoint discrimination but not in the context of social medial. *See Pahls v. Thomas*, 718 F.3d 1210 (10th Cir. 2013).

> We find it suspicious that the day after a North Texas Police Officer is murdered we have received several anti police calls in the office as well as people trying to degrade or insult police officers on this page. ANY post filled with foul language, hate speech of all types and comments that are considered inappropriate will be removed and the user banned. There are a lot of families on this page and it is for everyone and therefore we monitor it extremely closely. Thank you for your understanding.

*Id* at 445. The plaintiff made a number of posts challenging the policy and claiming that the policy violated her First Amendment right to make degrading and insulting remarks about the police, including "highly offensive remarks about HCSO and the deceased police officer…" *Id*. Plaintiff alleged that her posts were deleted and she was banned from the page. *Id*. The District Court dismissed the complaint, including the grant of qualified immunity to the individual defendants and the plaintiff appealed.

On appeal, the plaintiff did not challenge the grant of qualified immunity. Instead, she tried to argue some individual claims escape the immunity analysis. The Fifth Circuit affirmed the dismissal of the individual defendants. However, the Fifth Circuit did take up plaintiff's viewpoint discrimination claim against the sheriff's office. Specifically, the Fifth Circuit held that the sheriff's office presentation of matters of local public interest on the HCSO Facebook page through frequent postings and willingly and knowingly creating and configuring the HCSO Facebook page to be open to the public and allow page visitors to interact openly with the page created a public forum. As such, the deletion of plaintiff's comments violated her First Amendment rights. Notably, the Fifth Circuit devoted significant discussion to the fact that the Facebook Page claimed to be the official page of the HCSO and was essentially run by Hunt County.

In *Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019), as amended (Jan. 9, 2019), the Fourth Circuit considered a case where a county commission chair operated a Facebook page called the Chair Phyllis J. Randall Facebook Page. *Id*. at 673 (4th Cir. 2019), as amended (Jan. 9, 2019). The

"Chair" being the position to which she was newly elected. The Chair shared control over the page

with her chief of staff. *Id.* The chair characterized the page as her "county Facebook page" which

explained:

> I really want to hear from ANY [county] citizen on ANY issues,
> request, criticism, complement or just your thoughts. However, I
> really try to keep back and forth conversations (as opposed to one
> time information items such as road closures) on my county
> Facebook page (Chair Phyllis J. Randall) or County email
> (Phyllis.randall@loudoun.gov). Having back and forth constituent
> conversations are Foiable ( [Freedom of Information Act] ) so if you
> could reach out to me on these mediums that would be appreciated.

*Id.* at 673. The chair's posts were

> almost always directed to "Loudoun," and deal with numerous
> aspects of Randall's official responsibilities. For example, Randall
> used the Chair's Facebook Page to notify the public about upcoming
> Loudoun Board meetings, and the subjects to be discussed during
> those meetings. Randall also used the page to inform Loudoun
> County residents about significant public safety issues. See, e.g.,
> J.A. 412 (stating that Loudoun Board had "been informed by the
> Sheriff's Office about the non-legitimate threat made on social
> media toward Dominion High School in Sterling"); J.A. 418
> (reporting that she "ha[d] been briefed regarding the student falling
> from the water tower this morning" and advising the public to "not
> make any assumptions but wait for information"). And Randall used
> the Chair's Facebook Page to coordinate Loudoun County's response
> to a large snow storm, including to communicate with constituents
> regarding which municipal streets required plowing.

*Id.* at 673–74.

Plaintiff, a member of the community, posted comments accusing the local school board

of misconduct onto the Chair's page. The Chair deleted the posts and blocked the plaintiff from

posting; she later removed the block. Plaintiff sued claiming the deletion and the block were First

Amendment violations. The District Court held a trial and found that the site was a public forum

and the Chair's conduct was a First Amendment violation.

On appeal, the Fourth Circuit, after considering a number of factors that indicated that the page was an official page, held that the page was a public forum. Specifically, the Court stated the following as part of its basis:

> Randall created and administered the Chair's Facebook Page to further her duties as a municipal official. She used the Chair's Facebook Page "as a tool of governance," *id.* at 713: through the Chair's Facebook Page, Randall provides information to the public about her and the Loudoun Board's official activities and solicits input from the public on policy issues she and the Loudoun Board confront.

*Davison v. Randall*, 912 F.3d 666, 680 (4th Cir. 2019), as amended (Jan. 9, 2019). The Court held that the Chair:

> swathe[d] the [Chair's Facebook Page] in the trappings of her office. Among other things, (1) the title of the page includes [Randall]'s title; (2) the page is categorized as that of a government official; (3) the page lists as contact information [Randall]'s official County email address and the telephone number of [Randall]'s County office; (4) the page includes the web address of [Randall]'s official County website; (5) many—perhaps most—of the posts are expressly addressed to "Loudoun," [Randall]'s constituents; (6) [Randall] has submitted posts on behalf of the [Loudoun Board] as a whole; (7) [Randall] has asked her constituents to use the [Chair's Facebook Page] as a channel for "back and forth constituent conversations"; and (8) the content posted has a strong tendency toward matters related to [Randall]'s office.

*Id.* at 680–81. "A private citizen could not have created and used the Chair's Facebook Page in such a manner." *Id.* at 681.

Finally, in *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226 (2d Cir. 2019), the Second Circuit considered a challenge to the United States President blocking specific individuals or groups from his Twitter account. In *Knight*, the government "conceded that the account in question is not itself independent of Trump's presidency, but contends that the act of blocking was private conduct that does not implicate the First Amendment." *Id.* at 231. The

Twitter page in question was registered to "Donald J. Trump "45th President of the United States

of America, Washington D.C." *Id*. (internal brackets removed).

> The President and multiple members of his administration have
> described his use of the Account as official. The President has
> stipulated that he, with the assistance of Defendant Daniel Scavino,
> uses the Account frequently "to announce, describe, and defend his
> policies; to promote his Administration's legislative agenda; to
> announce official decisions; to engage with foreign political leaders;
> to publicize state visits; [and] to challenge media organizations
> whose coverage of his Administration he believes to be unfair.

*Id*. at 231. "In June 2017, then–White House Press Secretary Sean Spicer stated at a press

conference that President Trump's tweets should be considered "official statements by the

President of the United States." *Id*. "In June 2017, the White House responded to a request for

official White House records from the House Permanent Select Committee on Intelligence by

referring the Committee to a statement made by the President on Twitter." *Id*. at 232.

> Moreover, the Account is one of the White House's main vehicles
> for conducting official business. The President operates the Account
> with the assistance of defendant Daniel Scavino, the White House
> Director of Social Media and Assistant to the President. The
> President and his aides have characterized tweets from the Account
> as official statements of the President. For example, the President
> used the Account to announce the nomination of Christopher Wray
> as FBI director and to announce the administration's ban on
> transgender individuals serving in the military. The President used
> the Account to first announce that he had fired Chief of Staff Reince
> Priebus and replaced him with General John Kelly. President Trump
> also used the Account to inform the public about his discussions
> with the South Korean president concerning North Korea's nuclear
> program and about his decision to sell sophisticated military
> hardware to Japan and South Korea.

> Finally, we note that the National Archives, the agency of
> government responsible for maintaining the government's records,
> has concluded that the President's tweets are official records.

*Id*.

After explaining the level of recognition that the President's Twitter account was an official method of communicating with constituents on official matters, the Second Circuit held that "the First Amendment does not permit a public official who utilizes a social media account for all manner of official purposes to exclude persons from an otherwise–open online dialogue because they expressed views with which the official disagrees." *Id* at 230. The Second Circuit continued by noting that:

> Of course, not every social media account operated by a public official is a government account. Whether First Amendment concerns are triggered when a public official uses his account in ways that differ from those presented on this appeal will in most instances be a fact–specific inquiry. The outcome of that inquiry will be informed by how the official describes and uses the account; to whom features of the account are made available; and how others, including government officials and agencies, regard and treat the account.

*Id.* at 236. Because "[t]he Account was intentionally opened for public discussion when the President, upon assuming office, repeatedly used the Account as an official vehicle for governance and made its interactive features accessible to the public without limitation." *Id.* at 237. Accordingly, the Court held that the Twitter account was a "public forum" and that the President's block on certain individuals was viewpoint discrimination. *Id.*

Accordingly, under the Second, Fourth, and Fifth Circuit analysis, the question essentially reduces to whether or not the social media account in question is a "public forum." "To determine whether a public forum has been created, courts look "to the policy and practice of the government" as well as "the nature of the property and its compatibility with expressive activity to discern the government's intent. *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 237 (2d Cir. 2019). The courts also consider whether the government has control over the forum. *Id.* "Accordingly, the hallmark of both types of public fora—what renders the fora "public"—is that

the government has made the space available—either by designation or long-standing custom—for "expressive public conduct" or "expressive activity," and the space is compatible with such activity. *Davison v. Randall*, 912 F.3d 666, 681 (4th Cir. 2019), *as amended* (Jan. 9, 2019).

The factors considered by the three cases and the underlying facts illustrate why Mr. Swanson has not pled a plausible claim that Cowboys for Trump's Facebook page is a public forum. For example in *Robinson v. Hunt County, Texas*, 921 F.3d 440 (5th Cir. 2019), *reh'g denied* (May 16, 2019) the Court relied on, among other things, the fact that the Sheriff's Office webpage stated:

> Welcome to the official Hunt County Sheriff's Office Facebook page. We welcome your input and POSITIVE comments regarding the Hunt County Sheriff's Office." The page description further stated: "The purpose of this site is to present matters of public interest within Hunt County, Texas…"

As discussed above, the *Knight First Amendment Inst. at Columbia Univ.* case was replete with official acknowledgment and affirmative statements that the President's Twitter page should be considered official statements of the President. Similarly, the Chair's Facebook page in *Davison v. Randall*, 912 F.3d 666, 673 (4th Cir. 2019), stated:

> I really want to hear from ANY Loudoun citizen on ANY issues, request, criticism, complement or just your thoughts. However, I really try to keep back and forth conversations (as opposed to one time information items such as road closures) on *my county Facebook page (Chair Phyllis J. Randall)* or County email (Phyllis.randall@loudoun.gov). Having back and forth constituent conversations are Foiable ( [Freedom of Information Act] ) so if you could reach out to me on these mediums that would be appreciated.

The Davison Court also noted that the page included invitations to the public to apply to participate on the public commission and to participate in public meetings regarding key issues facing local residents. *Id.* at 674.

By comparison, Mr. Swanson's Complaint is essentially devoid of allegations from which the Court could deduce that Cowboys for Trump is a public forum subject to First Amendment scrutiny. Other than vague conclusory allegations the Complaint is silent as to the requisite fact allegations required to illustrate a public forum. *See generally* Complaint at ¶10. Other than Plaintiff's assertion that Mr. Griffin is a County Commissioner and the allegation that he has mentioned public meetings on the Cowboys for Trump Facebook page, the other elements of the public forum analysis are absent. For example, there are no fact allegations from which the Court could discern that the government has any control over the Cowboys for Trump Facebook page. Similarly, there are no facts alleged supporting the conclusion that the government had any intent to create or maintain a public forum. Unlike all three of the cited cases, there is no allegation of an outward invitation by Mr. Griffin or Cowboys for Trump for the public to comment on or participate in a public forum, including no example of such an invitation in the exhibits attached to the Complaint.

Instead, a review of the Cowboys for Trump Facebook page and the associated webpage[4] illustrates the following:

- Cowboys for Trump is designated as a "News and Media" Website;

- Nothing in the "about" section or the header sections mention Otero County or the Commission;

- There is no invitation for the public to comment on Otero County business;

---

[4] Because the Plaintiff referred to the page in his Complaint and attached portions of the page to the Complaint, the Court can review the entire page without converting the motion to a Rule 56 motion. The Facebook page links directly to the webpage, so the Court may review that as well. *See Francis v. APEX USA, Inc.*, 406 F. Supp. 3d 1206 (W.D. Okla. 2019)(Under exception to rule that district court may not consider matters outside of pleadings without converting motion to dismiss into motion for summary judgment, court may consider: (1) documents attached to the complaint as exhibits, (2) documents referenced in the complaint that are central to the plaintiff's claims if the parties do not dispute the documents' authenticity, and (3) matters of which the court may take judicial notice.)

- The vast majority of the content is devoted to Cowboys for Trump's respect and honor for President Trump[5].

Because the Complaint and the internal webpage indicate no intention to create a public forum or a government owned forum, there can be no First Amendment Claim. Therefore, Plaintiff's Count I fails to state a plausible claim under which relief may be granted. Further, Defendant Griffin is entitled to qualified immunity under the first prong of the qualified immunity analysis.

### b. THE LAW REGARDING PLAINTIFF'S FIRST AMENDMENT CLAIM IS NOT CLEARLY ESTABLISHED.

Even if the Plaintiff had included sufficient facts from which a plausible claim could be identified, the law regarding social media viewpoint discrimination is not clearly established in this Circuit. Defendants have been unable to identify any Tenth Circuit case finding a First Amendment violation, or any violation, when an elected official blocks critics from their Facebook page.

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir.2001). Courts must not define the relevant constitutional right "at a high level of generality." *White v. Pauly*,137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)). Instead, as the Supreme Court "explained decades ago, the clearly established law must be 'particularized' to the facts of the case." *Id*. (quoting *Creighton*, 483 U.S. at 640, 107 S.Ct. 3034); *see also id.* (holding that lower court

---

[5] The Facebook Page may be found at: https://www.facebook.com/baredown/; The webpage may be found at: https://www.cowboysfortrump.org/

"misunderstood the 'clearly established' analysis" when it determined the law was clearly established without first "identify[ing] a case where an officer acting under similar circumstances as [defendant] was held to have violated" relevant constitutional right). *Perry v. Durborow*, 2018 WL 2925202, at \*5 (10th Cir. June 12, 2018).

Here, the absence of a Tenth Circuit or Supreme Court case on point, and the lack of jurisprudence in this area generally, leave the law unestablished in the Tenth Circuit. Therefore, even if the Court found a plausible violation by Mr. Griffin, he would still be entitled to qualified immunity from suit under the second prong of the qualified immunity analysis. Accordingly, Mr. Griffin prays for qualified immunity under both prongs I and II of the qualified immunity analysis.

## II. PLAINTIFF HAS FAILED TO PLEAD A PLAUSIBLE CLAIM AGAINST DEFENDANT TILLBROOK UNDER THE NEW MEXICO INSPECTION OF PUBLIC RECORDS ACT.

The question of whether the documents requested are "public records" under the New Mexico Inspection of Public Records Act turns on whether Cowboys for Trump is a public entity or forum. In other words, if the Court accepts Defendants argument that Cowboys for Trump is not a public forum, then Cowboys for Trump is not governmental. NMSA § 14-2-6 states that:

> "public records" means all documents, papers, letters, books, maps, tapes, photographs, recordings and other materials, regardless of physical form or characteristics, that are used, created, received, maintained or held by or on behalf of any public body and relate to public business, whether or not the records are required by law to be created or maintained

NMSA 1978 § 14-2-6. If the Cowboys for Trump Facebook page is not a public forum for Otero County, New Mexico or for Mr. Griffin in his capacity as an Otero County Commissioner, then it logically follows that any records on the Facebook page or in Facebook messenger were not "used, created, received, maintained or held by or on behalf of any public body." Similarly, if Cowboys

for Trump's Facebook page is not a public forum, then no document that it holds or held relates to public business.

Therefore, because Cowboys for Trump is not a public forum, the documents requested are not subject to inspection under the New Mexico Inspection of Public Records Act. Wherefore, Defendants request the Court dismiss Count II (IPRA) with prejudice.

## CONCLUSION

The Plaintiff's Complaint fails to illustrate a plausible claim that Cowboys for Trump is a public forum. Because the Plaintiff has not nudged his assertion from merely possible to plausible, the Court should dismiss Count I of Plaintiff's Complaint with prejudice. Count I is the only claim against Mr. Griffin. As such, he should be dismissed from this suit. To be clear, Defendants are requesting qualified immunity on the purely legal basis that the Plaintiff has failed to meet the *Iqbal* plausibility standard as it related to Count I of the Complaint,

In the alternative, Defendants request the Court find the law to not be clearly established. In other words, because there is no Tenth Circuit case, no Supreme Court case, and insufficient extra-circuit cases to clearly establish the law, Defendants request the Court grant qualified immunity from suit to Defendant Griffin. Defendant Griffin is named in his individual capacity only; therefore, all claims against him should be dismissed under the qualified immunity doctrine (both prong I and prong II).

Once the Court has found Cowboys for Trump to be non-governmental, the Court should also dismiss Count II, the IPRA claim, because Plaintiff may not serve an IPRA request on a private entity for private records. Because a decision on prong I above would eliminate the entire Complaint, Defendants request the Court take up the immunity prongs in order: first whether the Complaint states any plausible claim then, second, whether any federal claim is clearly established.

Because this is a novel issue of law, the Defendants request oral argument so that they may have the opportunity to respond to any inquiry the Court may have. Defendants also request a stay of all discovery pending a resolution of the qualified immunity issue.

Because this Motion illustrates both Defendants' entitlement to dismissal as a matter of law, Defendants request the Court dismiss the Complaint with prejudice.

Respectfully Submitted,

NEW MEXICO ASSOCIATION OF COUNTIES

/s/ Brandon Huss
Brandon Huss
David Roman
Mark Drebing
*Attorneys for Defendants*
111 Lomas Blvd., Ste. 424
Albuquerque, New Mexico 87102
(505) 820-8116

I hereby certify that on this 29th day of May, 2020, I caused a true and correct copy of the foregoing *Motion* to be filed electronically through the CM/ECF system, which caused all counsel of record to be served, as noted on the notice of electronic filing.

/s/ Brandon Huss
Brandon Huss