IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JEFF SWANSON,

    Plaintiff,

vs.                                                            Civ. No. 20-496 KG/GJF

COUY GRIFFIN,
Otero County Commissioner in his individual
capacity acting under the color of law, and
SYLVIA TILLBROOK, Otero County
Records Custodian,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This case involves two questions: when does a public official's Facebook page become subject to (1) the First Amendment's prohibitions against viewpoint discrimination and retaliation, and (2) the New Mexico Inspection of Public Records Act (IPRA)? Defendants filed the instant "Defendants' Motion to Dismiss and for Qualified Immunity" (Motion to Dismiss) on May 29, 2020, in which they move to dismiss this lawsuit under Fed. R. Civ. P. 12(b)(6). (Doc. 6). Defendants filed a Notice of Errata the following day. (Doc. 7). The matter is now fully and timely briefed. *See* (Docs. 10, 11, 12, and 13). The Court notes jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and § 1367 (supplemental jurisdiction).

Having considered the "Complaint to Recover Damages Due to Deprivation of Civil Rights Violations of the United States and the New Mexico Constitutions and for Violations of the New Mexico Inspection of Public Records Act" (Complaint) (Doc. 1-2), the briefing, the

Notice of Errata, the controlling law, and for the following reasons, the Court denies the Motion to Dismiss.[1]

*I. The Complaint*

Plaintiff alleges that he "is a vocal proponent of government transparency and accountability and has at times expressly critici[zed] Defendant Commissioner Couy Griffin's actions as an Otero County Commissioner." (Doc. 1-2) at 1. Plaintiff further alleges that Defendant Griffin has responded to that criticism "with hostility and unprofessionalism." *Id.*

Plaintiff contends that sometime in 2019 or before 2019 Defendant Griffin blocked Plaintiff from his Facebook page. *Id.* at 2, ¶ 6. Plaintiff alleges that Defendant Griffin uses his Facebook page to discuss "the public business of Otero County with constituents." *Id.* It also is undisputed that Defendant Griffin's "Facebook page is an individual profile;" Defendant Griffin "does not refer to himself as a County Commissioner in the 'about' section of his … Facebook page;" and "[t]here is no written invitation to submit comment regarding public business."[2] (Doc. 7) at 1.

Following a recent Otero County Commission meeting, Defendant Griffin allegedly "posted a discussion of that meeting on his Facebook page…." (Doc. 1-2) at 1. Given that Defendant Griffin had blocked Plaintiff from his Facebook page, Plaintiff asked his attorney to make an IPRA request from Otero County to inspect blocked posts from Defendant Griffin's Facebook page. *Id.* at 1-2.

---

[1] The Court notes that Defendants request oral argument on the Motion to Dismiss. Considering the Complaint as well as the briefing on the Motion to Dismiss and the Notice of Errata, the Court does not find that oral argument would be helpful or necessary for the Court to rule on the Motion to Dismiss. The Court, therefore, denies Defendants' request for oral argument.

[2] The Court observes that Plaintiff does not object to these descriptions of Defendant Griffin's Facebook page provided in the Notice of Errata.

2

On March 29, 2020, Plaintiff's attorney emailed Defendant Sylvia Tillbrook, the Otero County Administration Executive Assistant, to make an IPRA request for the following documents:

> 1. A copy of the Facebook page evincing the people Couy Griffin on his page had blocked as of today's date.
> 2. Copies of all Facebook messenger messages regarding public business sent or received by Couy Griffin[.]
> 3. Copies of every post including the comments from Couy Griffin's Facebook page regarding county business for the last 12 months.

*Id.* at 11.

On April 14, 2020, the Otero County Attorney responded to the IPRA request. *Id.* at 10. The Otero County Attorney provided "four screenshots showing people blocked on Facebook by" Defendant Griffin, including Plaintiff. *Id.* at 9-10. The Otero County Attorney, however, did not provide copies of "Facebook messenger messages regarding public business" because Defendant Griffin indicated "that there are no records responsive to [that] request." *Id.* at 10. Finally, with respect to the request for copies of Facebook posts and comments "regarding county business for the last 12 months," the Otero County Attorney stated that Defendant Griffin unblocked Plaintiff on Facebook so he "may review this material online on" Defendant Griffin's Facebook page. *Id.*

Plaintiff alleges that "[s]ometime between March 29, 2020 and April 16, 2020 Defendant Griffin undertook to destroy the requested records by deleting them from his Facebook page...." *Id.* at 2, ¶ 8. Nonetheless, Plaintiff attached to the Complaint posts from Defendant Griffin's Facebook page dating from January 9, 2019, to July 20, 2019.[3] *Id.* at 12-29.

---

[3] Although a Rule 12(b)(6) motion to dismiss examines "the sufficiency of a complaint [which] must rest on its contents alone," a court ruling on such a motion to dismiss may rely on documents attached to the complaint as exhibits without converting the motion to dismiss to a motion for summary judgment. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

Plaintiff brings his First Cause of Action against Defendant Griffin, in his individual capacity, pursuant to 42 U.S.C. § 1983. Plaintiff asserts two First Amendment claims in the First Cause of Action. First, Plaintiff alleges that Defendant Griffin violated the First Amendment by engaging in viewpoint discrimination. Plaintiff contends the viewpoint discrimination occurred when Defendant Griffin blocked Plaintiff from his Facebook page, which Plaintiff alleges is a public forum. (Doc. 1-2) at 3-4, ¶ 14. Second, Plaintiff alleges that Defendant Griffin violated the First Amendment by retaliating against Plaintiff's exercise of his First Amendment rights. Plaintiff contends that the retaliation occurred when Defendant Griffin withheld and destroyed posts and materials from his Facebook page, documents Plaintiff alleges constitute public records.

Finally, Plaintiff brings a Second Cause of Action against Defendant Tillbrook in her capacity as an Otero County records custodian.[4] Plaintiff alleges that Defendant Tillbrook violated IPRA "by failing to respond or provide for inspection" the Facebook posts and materials Plaintiff's attorney requested on March 29, 2020. *Id.* at 4, ¶ 18. Plaintiff maintains that those posts and materials constitute "public documents" subject to an IPRA inspection.

*II. The Motion to Dismiss*

Defendants move under Rule 12(b)(6) to dismiss all claims with prejudice. Defendants assert that Defendant Griffin is entitled to qualified immunity with respect to the First Cause of Action. Specifically, Defendants argue that Plaintiff has not stated a plausible First Amendment viewpoint discrimination claim against Defendant Griffin, and the law regarding that First Amendment viewpoint discrimination claim was not clearly established at the time the alleged

---

[4] Plaintiff inadvertently refers to a "Defendant Montoya" in the Second Cause of Action. *See* (Doc. 1-2) at 4.

viewpoint discrimination occurred. With respect to the Second Cause of Action, Defendants assert that Plaintiff has failed to state a plausible IPRA claim against Defendant Tillbrook. Plaintiff opposes the Motion to Dismiss in its entirety.

*III. Standard of Review*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In making this plausibility assessment, courts "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quoting *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011)).

*IV. Discussion*

*A. The First Cause of Action: First Amendment Claims and Qualified Immunity*

Defendants argue that Defendant Griffin is entitled to qualified immunity with respect to the First Amendment claims raised in the First Cause of Action. In evaluating a qualified immunity defense in the context of a Rule 12(b)(6) motion to dismiss, courts "must determine whether the plaintiff pled facts indicating: (1) the defendant violated a statutory or constitutional right and (2) that right was 'clearly established' at the time of the challenged conduct." *Crall v. Wilson*, 769 Fed. Appx. 573, 575 (10th Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Here, Defendants assert that Plaintiff had not pled facts demonstrating that he

meets either prong of the qualified immunity analysis and, thus, the Court should dismiss the First Cause of Action under Rule 12(b)(6) with prejudice.

> *1. First Qualified Immunity Prong: Violation of the First Amendment*
>
>> *a. Whether Plaintiff has Stated a Plausible First Amendment Viewpoint Discrimination Claim Against Defendant Griffin*

"When the government provides a forum for speech (known as a public forum), the government may be constrained by the First Amendment, meaning that the government ordinarily may not exclude speech or speakers from the forum on the basis of viewpoint...." *Manhattan Community Access Corp. et al. v. Halleck et al.*, 587 U.S. ––––, 139 S.Ct. 1921 (2019). "As a general matter, social media is entitled to the same First Amendment protections as other forms of media," including to be free from viewpoint discrimination. *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 237 (2d Cir. 2019). However, "not every social media account operated by a public official is a government account" or a public forum. *Id.* at 236.

Generally, "[t]o determine whether a public forum has been created, courts look 'to the policy and practice of the government' as well as 'the nature of the property and its compatibility with expressive activity to discern the government's intent.'" *Id.* at 237 (citation omitted). Moreover, "[o]pening an instrumentality of communication 'for indiscriminate use by the general public' creates a public forum." *Id.* Applying these general principles to whether a public official's social media account constitutes a public forum, courts examine "how the official describes and uses the account; to whom features of the account are made available; and how others, including government officials and agencies, regard and treat the account." *Id.* at 236.

For example, conduct that creates a public forum in the social media context includes "intentionally open[ing]" a social media account "for public discussion… upon assuming office, repeatedly us[ing] the [a]ccount as an official vehicle for governance and ma[king] its interactive features accessible to the public without limitation." *Id.* at 237. Other such conduct includes inviting the public to post "matters of public concern" and seeking an "exchange of views," i.e., making the social media account "compatib[le] with expressive activity." *Davison v. Randall*, 912 F.3d 666, 682 (4th Cir. 2019), *as amended* (Jan. 9, 2019) (citation omitted). In addition, the following conduct supports a finding that a Facebook page, in particular, is a public forum: designating a Facebook page "as belonging to a 'governmental official,'" "cloth[ing] the page in the trappings of [the] public office," listing "official contact information on the page," and having the authority to control "the interactive component of the page," including blocking users. *Id.* at 683.

In this case, Plaintiff generally alleges that Defendant Griffin's Facebook page is a public forum in which he "discuss[es] public business with the general public…." (Doc. 1-2) at 3, ¶ 11. Admittedly, Plaintiff does not allege (1) that Otero County had a policy and practice regarding the use of Facebook pages by public officials; (2) that Defendant Griffin created the Facebook page upon becoming an Otero County Commissioner or designated the Facebook page as belonging to an Otero County Commissioner; (3) that Defendant Griffin explicitly invited "an exchange of views" by the public or clothed the Facebook "page in the trappings of [the] public office" by including, for instance, "official contact information;" or (4) how "others, including government official and agencies, regard and treat the" Facebook page. *See Knight First Amendment Inst. at Columbian Univ.*, 928 F.3d at 236-37; *Davison*, 912 F.3d at 682-83. Indeed, it is undisputed that Defendant Griffin's "Facebook page is an individual profile," not a

government page; Defendant Griffin "does not refer to himself as a County Commissioner in the 'about' section of his personal Facebook page;" and "[t]here is no written invitation to submit comment regarding public business." (Doc. 7) at 1.

Nonetheless, viewing the Complaint as true and viewing both the Complaint and attached Facebook posts in the light most favorable to Plaintiff, the Court reasonably infers from the Complaint and those Facebook posts that Defendant Griffin made clear in his Facebook page that he is an Otero County Commissioner. The Court also reasonably infers that Defendant Griffin entertained comments from the public, without limitation, prior to exercising his authority to block those commentators who oppose his viewpoint. (Doc. 7) at 1. Additionally, having viewed the Facebook posts attached to the Complaint in the light most favorable to Plaintiff, the Court reasonably infers from those posts that they concerned public busines and that Defendant Griffin, in fact, repeatedly used his Facebook page "as an official vehicle for governance." *See Knight First Amendment Inst. at Columbia Univ.*, 928 F.3d at 237. More specifically, the Court reasonably infers from the Facebook posts that Defendant Griffin, in his capacity as an Otero County Commissioner, created the posts to garner public support for certain public policies and to advance those policies in the Otero County Commission in order to shape the governance of Otero County. For instance, Defendant Griffin created posts in which he:

    1. congratulated Hidalgo County for authoring a letter seeking resources to cope with illegal immigration and congratulated Chavez County for approving an asylum seeker resolution;

    2. discussed meeting with the Otero County Attorney about drafting a resolution regarding Otero County's status as a sanctuary county for an upcoming Otero County Commission agenda;

3. coordinated a post-Otero County Commission meeting to discuss Otero County's status as a sanctuary county and Second Amendment rights;

4. encouraged people to support local county commissions and county sheriffs who supported former President Donald Trump's national emergency declaration;

5. shared a letter he sent to Congresswoman Small regarding border security, which Defendant Griffin signed in his capacity as an Otero County Commissioner;

6. commented that if the Governor threatens to use appropriations control against Otero County the Governor still cannot take way "our guns;"

7. posted the Otero County Law Enforcement Appreciation Day Proclamation, which the Otero County Commission issued;

8. endorsed statements by two Otero County Commissioners who do not support housing immigrants within the county;

9. referred to a newspaper article to explain why he and another Otero County commissioner "passed a resolution to protect tax dollars and resources from being spent on illegal aliens/asylum seekers;"

10. posted a letter that several New Mexico county elected officials sent to the New Mexico Congressional Delegation seeking more resources for border security, which Defendant Griffin joined in his capacity as "Otero County Commission Chair;"

11. encouraged people to call county commissioners to "demand resolutions to be put in place to safeguard taxpayer monies and county resources against illegals/asylum seekers;" and

12. criticized the Governor for not reaching out to the Otero County Sheriff and Otero County Government. (Doc. 1-2) at 12, 14, 16-19, 21-25, 27, and 29.

Additionally, Defendant Griffin's actions with respect to his Facebook page, as alleged and demonstrated in the posts attached to the Complaint, exemplify why the First Amendment prohibits viewpoint discrimination. Viewing the Complaint and its attached posts in the light most favorable to Plaintiff, the Court can reasonably infer from the allegations in the Complaint and from the posts, that Defendant Griffin, as an avid Facebook user, is familiar with how to maintain a private Facebook page not accessible to the public. The Court reasonably infers from Defendant Griffin's failure to maintain a private Facebook page that he knowingly intended for his Facebook to have a public reach. A public official, like Defendant Griffin, cannot block opposing views from a personal Facebook page that is open to the public and discusses matters of public concern and then claim that the Facebook page does not have sufficient indicia of a public forum to be subject to the First Amendment. In other words, Defendant Griffin, cannot use a social media platform such as Facebook as both a sword and shield.

For the foregoing reasons, the Court concludes that Plaintiff has pled facts and included evidence attached to the Complaint demonstrating that Defendant Griffin's Facebook page is a public forum subject to the First Amendment and that Defendant Griffin blocked Plaintiff from that public forum because his views differed from Defendant Griffin's. Consequently, Plaintiff has stated a plausible First Amendment claim for viewpoint discrimination.

### b. Whether Plaintiff has Stated a Plausible First Amendment Retaliation Claim Against Defendant Griffin

Although Defendants move to dismiss all of Plaintiff's claims, Defendants do not explicitly argue that Plaintiff failed to state a plausible First Amendment retaliation claim against Defendant Griffin. Presumably, Defendants would argue that Plaintiff cannot state a plausible First Amendment retaliation claim associated with Defendant Griffin's Facebook page when no First Amendment right exists as to that Facebook page. *See Shero v. City of Grove, Okl.*, 510

F.3d 1196, 1203 (10th Cir. 2007) (noting that one element of First Amendment retaliation claim requires "that the plaintiff was engaged in constitutionally protected activity") (citations omitted). Considering the Court, in fact, concluded that Plaintiff pled facts and, otherwise shown, that Defendant Griffin's Facebook page is a public forum subject to the First Amendment, the aforementioned argument for dismissal of the First Amendment retaliation claim lacks merit.

Furthermore, viewing the allegations in the Complaint as true, and viewing the Complaint and its attachments in the light most favorable to Plaintiff, the Court determines that Plaintiff has pled a plausible First Amendment retaliation claim by alleging facts that show: (1) Plaintiff "engaged in constitutionally protected activity" by posting on Defendant Griffin's Facebook page, a public forum; (2) Defendant Griffin's withholding and destruction of Facebook posts and materials caused Plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage" in Defendant Griffin's Facebook page; and (3) Defendant Griffin's withholding and destruction of Facebook posts and materials were "substantially motivated as a response to" Plaintiff's posts on Defendant Griffin's Facebook page. *See id.* (setting forth elements of First Amendment retaliation claim).

In sum, Plaintiff has met the first prong for defeating Defendant Griffin's qualified immunity defense, namely, that Plaintiff has pled facts and attached evidence to the Complaint that plausibly allege Defendant Griffin violated the First Amendment by engaging in viewpoint discrimination and retaliation. The Court, therefore, proceeds to examine the second qualified immunity prong: whether Plaintiff has pled facts showing that his First Amendment right to be free from viewpoint discrimination and retaliation were clearly established during the times relevant to this lawsuit.

### 2. Second Prong: Clearly Established Law

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) (quotation omitted). Ordinarily, "a preexisting Supreme Court or Tenth Circuit decision, or the weight of authority from other circuits, must make it apparent to a reasonable [official] that the nature of his conduct is unlawful." *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1210 (10th Cir. 2017). In deciding whether a precedent provides fair notice to a defendant, the United States Supreme Court has instructed courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, — U.S. —, 138 S. Ct. 1148, 1152 (2018). Rather, "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, — U.S. —, 137 S. Ct. 548, 552, (2017) (*per curiam*) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Although there need not be "a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question *beyond debate*."[5] *Kisela*, 138 S. Ct. at 1152 (emphasis added) (quoting *White*, 137 S. Ct. at 551). To summarize, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quoting *Mullenix v. Luna*, — U.S. —, 136 S. Ct. 305, 308 (2015)).

---

[5] "The law is also clearly established if the conduct is so obviously improper that any reasonable [official] would know it was illegal." *Callahan v. Unified Gov't of Wyandotte Cty.*, 806 F.3d 1022, 1027 (10th Cir. 2015). Plaintiff does not argue that this alternative "clearly established law" principle applies in this case.

> *a. Whether a First Amendment Right Based on Viewpoint Discrimination Carried Out on a Social Media Account was Clearly Established in 2019*

It has been clearly established since 2017 that "social media is entitled to the same First Amendment protections as other forms of media." *Knight First Amendment Inst. at Columbia Univ.*, 928 F.3d at 237 (citing *Packingham v. North Carolina*, ___ U.S. ___, 137 S.Ct. 1730, 1735-36 (2017)). Moreover, it has been clearly established since 1992 that First Amendment "viewpoint discrimination is not permitted by the government." *Id.* (citing *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679 (1992)). Importantly, the United States Supreme Court clearly established in 1995 that the public forum requirement for First Amendment viewpoint discrimination "need not be 'spatial or geographic' and the 'the same principles are applicable' to a metaphysical forum." *Id.* (quoting *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 830 (1995)).

The Court concludes from the above clearly established United States Supreme Court precedent that in 2019 it was "beyond debate" that a public official violates the First Amendment by using a social media account, like Facebook, as a public forum and then engaging in viewpoint discrimination with respect to that account. *See Davison*, 912 F.3d at 682 (acknowledging that in 2017 "Supreme Court … analogized social media sites, like the Chair's Facebook Page, to 'traditional' public forums, characterizing the internet as 'the most important place[ ] (in a spatial sense) for the exchange of views'") (quoting *Packingham*, 137 S.Ct. 1730 at 1735). In other words, in 2019, it would have been clear to a reasonable public official that a public official violates the First Amendment by establishing a Facebook page as a public forum and then blocking people from that page because their views differed from the public official's views. Defendant Griffin, therefore, had fair notice that such conduct would violate the First Amendment's prohibition against viewpoint discrimination. Consequently, Plaintiff has met the

13

second prong for defeating qualified immunity with respect to the First Amendment viewpoint discrimination claim against Defendant Griffin.

Given that Plaintiff has satisfied both prongs of the qualified immunity analysis with respect to the First Amendment viewpoint discrimination claim against Defendant Griffin, the Court concludes that Defendant Griffin is not entitled to qualified immunity as to that First Amendment claim. Furthermore, as the Court determined *supra*, Plaintiff has stated a plausible First Amendment viewpoint discrimination claim against Defendant Griffin. For both those reasons, Plaintiff's First Amendment viewpoint discrimination claim survives this Rule 12(b)(6) Motion to Dismiss.

> *b. Whether a First Amendment Right to be Free from Retaliation Premised on Viewpoint Discrimination Carried Out on a Social Media Account was Clearly Established in 2020*

Defendants do not contest that a general claim for retaliation under the First Amendment was clearly established in 2020. *See Shero*, 510 F.3d at 1203 (2007 Tenth Circuit case setting forth elements for First Amendment retaliation claim). Nonetheless, considering Defendant moves to dismiss all of Plaintiff's claims, the Court assumes, arguendo, that Defendant would assert that a First Amendment retaliation claim based on viewpoint discrimination resulting from a public official blocking an individual from a Facebook page constituting a public forum was not clearly established in 2020. That argument, however, fails because, as the Court determined, such a First Amendment viewpoint discrimination claim was clearly established by 2019.

As with the First Amendment viewpoint discrimination claim, the Court determines that Defendant Griffin is not entitled to qualified immunity with respect to the First Amendment retaliation claim. In addition, as discussed previously, the Court has determined that Plaintiff

stated a plausible First Amendment retaliation claim. For those two reasons, the First Amendment retaliation claim, likewise, survives this Rule 12(b)(6) Motion to Dismiss.

### B. The Second Cause of Action: IPRA Claim

Subject to certain exceptions not applicable to this case, IPRA provides that "[e]very person has a right to inspect public records of this state…." NMSA 1978, § 14-2-1 (2015 Cum. Supp.). "Public records" are any "materials regardless of physical form or characteristics, that are used, created, received, maintained or held by or on behalf of any public body and relate to public business, whether or not the records are required by law to be created or maintained…." NMSA 1978, § 14-2-6(G) (2015 Cum. Supp.).

Defendants argue that "if the Court declares Defendant Griffin's personal Facebook Page is not a public forum, it necessarily follows that the materials posted or contained therein are not public records" under IPRA. (Doc. 12) at 5. Under that scenario, Defendants conclude that Defendant Griffin's Facebook page would not be subject to IPRA's inspection requirement. However, given the Court concluded that Plaintiff plausibly pled and demonstrated that Defendant Griffin's Facebook page is a public forum, Defendants' argument for dismissing the IPRA claim has no merit. In fact, as discussed *supra*, Plaintiff has plausibly pled and provided evidence that Defendant Griffin, a member of the Otero County Commission, "a public body," created and received Facebook posts and materials "relate[ed] to public business." As such, Plaintiff has plausibly shown that those posts and materials constitute "public records" as defined by IPRA and, thus, are subject to the IPRA inspection requirement. For the foregoing reasons, the Court concludes that Plaintiff has stated a plausible IPRA claim that survives this Rule 12(b)(6) Motion to Dismiss.

IT IS ORDERED that

1. Defendants' request for oral argument on Defendants' Motion to Dismiss and for Qualified Immunity (Doc. 6) is denied; and

2. Defendants' Motion to Dismiss and for Qualified Immunity (Doc. 6) is denied.

*[signature]*
UNITED STATES DISTRICT JUDGE