FILED
United States Court of Appeals
Tenth Circuit

February 25, 2022

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

―――――――――――――――――――――

JEFF SWANSON,

    Plaintiff - Appellee,

v.

COUY GRIFFIN, Otero County Commissioner, in his individual capacity acting under the color of law,

    Defendant - Appellant,

and

SYLVIA TILLBROOK, Otero County Records Custodian,

    Defendant.

No. 21-2034
(D.C. No. 2:20-CV-00496-KG-GJF)
(D. N.M.)

―――――――――――――――――――――

### ORDER AND JUDGMENT*

―――――――――――――――――――――

Before **TYMKOVICH**, Chief Judge, **PHILLIPS**, and **McHUGH**, Circuit Judges.

―――――――――――――――――――――

    In 2019, Defendant/Appellant Couy Griffin, an Otero County Commissioner, blocked Plaintiff/Appellee Jeff Swanson from his Facebook profile after Mr. Swanson posted comments critical of Mr. Griffin's service as a county

――――――――――

    * This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

commissioner. Mr. Swanson commenced an action alleging Mr. Griffin's Facebook profile was a public forum and Mr. Griffin had engaged in viewpoint discrimination, in violation of the First Amendment. Mr. Griffin filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss raising a qualified immunity defense. The district court denied the motion, relying on out-of-circuit authority to conclude the law clearly established that (1) social media platforms are entitled to the same First Amendment protection as other public speech platforms and (2) a government official censoring speech violates the speaker's First Amendment rights. We reverse. The Supreme Court has repeatedly instructed lower courts not to define rights at a high level of generality when considering a qualified immunity defense. Furthermore, two of the three out-of-circuit cases relied on by Mr. Swanson are off-point, and a single out-of-circuit case is not capable of clearly establishing a proposition of law.

## I.   BACKGROUND

Mr. Swanson is a self-described "vocal proponent of government transparency and accountability." App. at 12. At times relevant to the allegations in Mr. Swanson's complaint, Mr. Griffin served as an Otero County Commissioner. Mr. Griffin maintained a Facebook profile on which he posted some comments about his work as an Otero County Commissioner. Mr. Swanson posted comments on Mr. Griffin's Facebook profile and "expressed criticism" about Mr. Griffin's actions as an Otero County Commissioner. *Id*. Following the criticism, Mr. Griffin blocked Mr. Swanson from viewing and commenting on his Facebook profile. After being blocked, Mr. Swanson filed a public records request with Otero County for (1) Facebook posts

by Mr. Griffin pertaining to Otero County business and (2) a list of individuals whom Mr. Griffin had blocked. Otero County provided Mr. Swanson a list of individuals blocked by Mr. Griffin but informed Mr. Swanson that there were no records of Facebook posts by Mr. Griffin pertaining to Otero County business.

Mr. Swanson filed a complaint in state court advancing two causes of action. The first, which is the only cause of action at issue in this appeal, advances a claim under 42 U.S.C. § 1983 against Mr. Griffin in his individual capacity for First Amendment violations sounding in viewpoint discrimination and retaliation.[1] Mr. Griffin and Ms. Tillbrook removed the case to federal court based on the first cause of action raising a federal question. Mr. Griffin and Ms. Tillbrook then filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

For his part, Mr. Griffin advanced a qualified immunity defense, contending (1) the allegations do not support the conclusion that his Facebook profile was a public forum such that there could be no First Amendment violation; and (2) even if Mr. Swanson's complaint pleads the elements of a constitutional violation, the applicability of the First Amendment to a government official's personal social media profile was not clearly established at the time Mr. Griffin blocked Mr. Swanson on Facebook. In response, Mr. Swanson argued Mr. Griffin converted his Facebook

---

[1] The second cause of action advances a state law claim under New Mexico's Inspection of Public Records Act against Sylvia Tillbrook in her official capacity as the Otero County records custodian. This cause of action is not before us on appeal, and we take no position on its viability.

profile into a public forum by discussing Otero County business and permitting members of the public to comment on his posts.

The district court denied the motion to dismiss. As to whether Mr. Griffin's Facebook profile was a public forum, the district court reasoned that the complaint contained sufficient allegations on this matter where it stated Mr. Griffin identified himself as an Otero County Commissioner, used the profile to post matters relevant to Otero County business and to "garner public support for certain public policies," and "entertained comments from the public" on these matters of public concern. *Id.* at 132. As to the second prong of the qualified immunity analysis, the district court reasoned the law clearly established that (1) social media is entitled to the same First Amendment protections as other forums for speech and (2) viewpoint discrimination when limiting speech violates the First Amendment. Thus, the district court reasoned the law clearly established that if a government official creates a public forum with his Facebook profile, the official violates the First Amendment by limiting speech and blocking a user based on the content of the user's posts. In support of this analysis, the district court relied heavily on *Knight First Amendment Institute at Columbia University v. Trump*, 928 F.3d 226 (2d Cir. 2019). But the district court did not cite any Supreme Court or Tenth Circuit authority addressing when an individual's social media profile becomes a public forum. This appeal followed. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (permitting appeal from denial of dismissal based on qualified immunity where defense turns on an issue of law).

4

## II.   DISCUSSION

### A.   *Standard of Review and Qualified Immunity Framework*

We review de novo a district court's denial of a motion to dismiss premised on qualified immunity. *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019). Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)). To overcome a qualified immunity defense, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, *and* (2) that the right was clearly established at the time of the challenged conduct.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). As the plaintiff must satisfy both prongs of this analysis, a court may address the prongs in any order. *Id.*

"In order for a constitutional right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 1004–05 (internal quotation marks omitted). "A plaintiff may satisfy this standard by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* at 1005 (internal quotation marks omitted). To demonstrate that the law is clearly established under the "weight of authority" approach, a plaintiff must identify more than "a handful of decisions from courts in other circuits that lend support to his

5

claim." *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1278 (10th Cir. 2009); *see also Routt v. Howry*, 835 F. App'x 379, 385 (10th Cir. 2020) (unpublished) ("[O]nly one case from another circuit . . . is insufficient to constitute the weight of authority from other circuits that is necessary to finding it clearly established that defendants' particular conduct violated [plaintiff's] rights."); *Parkhurst v. Lampert*, 339 F. App'x 855, 861 (10th Cir. 2009) (unpublished) (citing *Christensen* and concluding "a lone case from another circuit does not satisfy the 'weight of authority' standard").

While "the Supreme Court has 'repeatedly told courts not to define clearly established law at a high level of generality,'" it has also explained that "'officials can still be on notice that their conduct violates established law even in novel factual circumstances.'" *Quinn*, 780 F.3d at 1005 (first quoting *al-Kidd*, 563 U.S. at 742; and then quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). But more recent Supreme Court case law remarks that "the clearly established law must be 'particularized' to the facts of the case." *White*, 137 S. Ct. at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). And plaintiffs may not identify their claim through "extremely abstract rights" because this would "convert the rule of qualified immunity into a rule of virtually unqualified liability." *Id.* (quoting *Anderson*, 483 U.S. at 639). Ultimately, we must assess whether "existing precedent [has] placed the statutory or constitutional question beyond debate." *Id.* at 551 (quoting *Mullenix*, 577 U.S. at 12).

6

### B.     Analysis

We conclude Mr. Swanson did not carry his burden on the clearly established prong of the qualified immunity analysis. While Mr. Swanson has identified some generally applicable rules of law, Mr. Swanson has not identified a Supreme Court or Tenth Circuit case addressing a set of facts sufficiently similar to those surrounding Mr. Griffin's Facebook profile. Furthermore, although Mr. Swanson attempts to rely on out-of-circuit authority to demonstrate that the right he asserts is clearly established under the weight of authority approach, only one of the three out-of-circuit decisions is potentially on-point. But a plaintiff's identification of a single out-of-circuit case is not sufficient to satisfy the weight of authority approach.

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). If the government opens "a limited forum, . . . [it] must respect the lawful boundaries it has itself set. [It] may not exclude speech where its distinction is not 'reasonable in light of the purpose served by the forum,' nor may it discriminate against speech on the basis of its viewpoint." *Id.* at 829 (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 804–06 (1985)). Furthermore, "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

These general principles apply not only to traditional forums like a public sidewalk, but also to "metaphysical" forums. *Rosenberger*, 515 U.S. at 830. Thus, the First Amendment protects against viewpoint discrimination by the government in government-created public forums on social media. *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017).

But Mr. Swanson, critically, has not identified law clearly establishing when an individual government official's social media profile becomes a public forum. The Supreme Court has not addressed this question. *See Davison v. Randall*, 912 F.3d 666, 682 (4th Cir. 2019) ("[T]he Supreme Court nor any Circuit has squarely addressed whether, and in what circumstances, a governmental social media page . . . constitutes a public forum[.]"); *see also Biden v. Knight First Amendment Inst. at Columbia Univ.*, 141 S. Ct. 1220, 1221 (2021) (Thomas, J., concurring) (observing that "applying old doctrines to new digital platforms is rarely straightforward" and suggesting that First Amendment protection might not extend to social media pages where a private company controls the platform and could suspend or ban any user); *Morgan v. Bevin*, 298 F. Supp. 3d 1003, 1009 (E.D. Ky. 2018) ("This [c]ourt is mindful that it is one of the first to wrestle with the intersections of the application of free speech to developing technology and First Amendment rights of access to public officials using privately-owned channels of communication. It is a case of first impression in the Sixth Circuit and, if appealed, would be a case of first impression to the Supreme Court of the United States as well."). Nor has Mr. Swanson identified any decision by this court addressing this question. Rather, Mr. Swanson relies upon

three out-of-circuit cases: (1) *Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019); (2) *Robinson v. Hunt Cnty.*, 921 F.3d 440 (5th Cir. 2019); and (3) *Knight First Amendment Institute at Columbia University v. Trump*, 928 F.3d 226 (2d Cir. 2019). We discuss each in turn.

In *Davison*, Phyllis Randall, the chair of a county board of supervisors blocked the plaintiff from a Facebook page after the plaintiff posted a series of comments critical of Ms. Randall and the Board and suggested that Board members were operating under a conflict of interest. 912 F.3d at 675–76. The Fourth Circuit held Ms. Randall's action violated the First Amendment because it amounted to an effort "to suppress speech critical of [her] conduct of official duties or fitness for public office." *Id.* at 680 (quoting *Rossignol v. Voorhaar*, 316 F.3d 516, 524 (4th Cir. 2003)). On the surface, this case appears to support Mr. Swanson's position. But a closer review demonstrates that the facts of *Davison* are sufficiently distinguishable from those alleged by Mr. Swanson.

The Fourth Circuit concluded Ms. Randall's Facebook page was a public forum based on when she created the page, how she labeled the page, and how she used the page. *Id.* at 680–81. On the former two considerations, Ms. Randall created the page the day before she was sworn in as Chair of the Board, titling the page "Chair Phyllis J. Randall" and designating the page as a "governmental official" page. *Id.* at 673. Thus, while Mr. Swanson's complaint alleges Mr. Griffin used his Facebook profile in a manner similar to Ms. Randall, it is devoid of allegations that

9

Mr. Griffin created and titled his Facebook profile in a manner similar to the facts at issue in *Davison*.

Turning to *Robinson*, there the plaintiff raised a First Amendment claim after being blocked from accessing and commenting on a Facebook page. 921 F.3d at 445. The Fifth Circuit held that "[o]fficial censorship based on a state actor's subjective judgment that the content or protected speech is offensive or inappropriate is viewpoint discrimination." *Id.* at 447. But this holding was in the context of a Facebook page maintained by and titled under the name of the Hunt County Sheriff's Office. *Id.* at 445. This fact makes *Robinson* entirely distinguishable from the alleged facts underlying Mr. Griffin's creation and maintenance of his Facebook profile because the Hunt County Sheriff's Office, who created the social media forum, is a government entity rather than a private individual who also serves as a government official. Furthermore, where the Hunt County Sheriff's Office never contested whether its Facebook page was a public forum, the Fifth Circuit did not need to decide whether or when a social media account can become a public forum. *Id.* at 448. Thus, *Robinson* does not help clearly establish the missing aspect of Mr. Swanson's argument against qualified immunity.

Finally, Mr. Swanson relies upon the Second Circuit's decision in *Knight First Amendment Institute*. We need not analyze whether this decision is on-point with the facts alleged in Mr. Swanson's complaint. This is because a single out-of-circuit case does not satisfy the weight of authority approach for demonstrating the law is clearly established. *See Christensen*, 554 F.3d at 1278; *see also Routt*, 835 F. App'x at 385;

*Parkhurst*, 339 F. App'x at 861. Accordingly, even assuming the Second Circuit decision is on-point, Mr. Swanson has not carried his burden on the clearly established prong of the qualified immunity analysis.[2]

### III. CONCLUSION

We REVERSE the district court's denial of Mr. Griffin's motion to dismiss based on qualified immunity and REMAND for further proceedings consistent with this decision.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

[2] Even if we had concluded *Davison* shared a sufficient nexus of facts with the allegations in Mr. Swanson's complaint, two out-of-circuit decisions—*Davison* and the Second Circuit's decision in *Knight First Amendment Institute*—would not amount to a sufficient body of out-of-circuit case law to satisfy the weight of authority approach.